Good morning, Your Honors, and may it please the Court. My name is David Biederman, and I represent the appellants in this matter. Joining me at Council Table are Amina Al-Masih and Anthony Van Patten. The Ministry of Defense makes two main submissions this morning. The first is that Elahi's attachment action is governed by the Foreign Sovereign Immunity Act, FSIA Section 1610A, because Iran's Ministry of Defense is part of the essential government apparatus of Iran, exercising a core function of sovereignty. And under Section 1610A, the cubic judgment cannot be regarded as being presently used or intended for use for a commercial activity in the United States. Secondly, we submit that Elahi cannot invoke a Terrorism Risk Insurance Act, or TRIA, as an exception to the Ministry of Defense's immunity from attachment, because first, TRIA does not apply on its own terms, because the cubic judgment is not a blocked asset within the meaning of Section 201A of that statute. And secondly, that when Elahi received $2.3 million of U.S. Treasury funds, he irrevocably relinquished his rights to seek to attach those properties that are at issue in claims against the United States. Well, a big question that we have in front of us is whether or not you can even raise the relinquishment issue based on the United States Supreme Court's scope of remand. Well, the Ministry of Defense would submit to this Court that it is within the scope of remand. Obviously, Iran's Ministry of Defense was not aware until the remand proceedings and the briefs filed by Elahi in the United States that Elahi had even sought and received funds from the Treasury and had made a relinquishment. So there was no way for Iran's Ministry of Defense to have even been aware that there had been a relinquishment under TRIA. Do we have anywhere in the record the actual declaration containing the relinquishment and the date, a record of the date in which that occurred? I believe reference is made to the date of relinquishment in the United States' submission, the green brief. I believe also that Elahi's counsel in a brief gave at least the date that the relinquishment was made. We don't have the document itself. I'm not sure that was — if I may step back from the lectern and take the U.S. — the I'm not sure the relinquishment document was included in the appendix to the United States' brief. Is it something that we could take judicial notice of? Or, I mean, is it something that we have to remand for the district court to take evidence on in order for you to succeed in your claim? Well, our submission would be that the parties have — both the United States and Elahi have indicated that a relinquishment was made. I think the court can take judicial notice of the fact of relinquishment having been made. What the legal consequence, of course, of the relinquishment is for this panel or if the panel should decide on remand of the district court to decide. But I think the fact of relinquishment can be taken judicial notice of here. What authority do you have for that? The general afford I would apply would be analogies to other forms of — under IEPA or other sanctioned instruments of the effects of Federal regulations or other actions that affect individual rights under sanctions plans. I'm not aware of a similar situation regarding judicial notice of a relinquishment action under TRIA in this sense. The case — the issue presented here is fairly novel to this analogy to other situations where an issue had been the effect of OFAC regulations, Office of Foreign Asset Control regulations. I believe courts have taken judicial notice of that. I think we may be confusing the concepts of accepting a judicial admission versus actually taking judicial notice, which we would be taking of evidence. I understand that distinction. And I think all I can say is at least counsel for the issue of relinquishment. I understand from authorities that relinquishments are not subject — are subject to Privacy Act restrictions. They are not generally disclosed to the public. That is why Ron's Ministry of Defense was unaware until the briefs filed in this case that a relinquishment had been made, and therefore had no earlier opportunity to raise this issue because we were simply unaware that relinquishment had occurred. You know, the district court, in its opinion, which was issued in, I guess, 2004, said that there had been no relinquishment. And now we have evidence that there actually had been. I think at that time there may not have been, at the time before the district court proceedings. And maybe if that is an important distinction for this panel, remand would be appropriate. But I think maybe once we hear from both Elias Counsel and the United States Counsel this issue of the appropriate notice, whether it's judicial notice or otherwise, that this court may give, we can confront that in a moment. Counsel, you got notice of this when the supplemental briefs were filed. Is that correct? We got notice when the first — when the law — his first supplemental brief, that they received funds from the Treasury. We only got notice when the United States' amicus brief was filed, that a relinquishment had been executed. Yes, ma'am. We have a general rule that amicus briefs can only deal with issues that the parties have themselves raised. Now, when you got that notice from the brief, perhaps further inquiry was suggested on your part? Well, after the United States' amicus brief was filed, it certainly was. And therefore when we — But they had to tell you about it in their amicus brief before you did anything. But Your Honor, there was no way for — because, again, of the Privacy Act restriction that I just mentioned, there was no way for Iran's Ministry of Defense to have known prior to the amicus brief being filed that a relinquishment had been executed. And we took the next available opportunity in the relinquishment — our relinquishment brief that was specifically requested by this Court to adopt the United States' position in this regard. I'm normally mindful that appeals courts are reluctant to have arguments of amici imported automatically into the submissions of main parties. I think the nature — the peculiar nature of the briefing schedule and arrangement in this case and the peculiar nature of the underlying issue may justify an exception in this instance. Your Honor, may I focus — Can I just — going back to your first argument, foreign state under the core function, I wasn't on the panel when we had the original oral argument. I came in later. But from what I can see and it's — from what I've read, that MOG didn't really raise the issue or discuss the issue, that it was a foreign state in the — all the proceedings before. And I'm just wondering whether or not that issue was weighed. I mean, it seems to me the first time it came up was when the United States intervened before the U.S. Supreme Court. No, Your Honor. As I think the Supreme Court's per curiam opinion explains in ample detail, again, about how procedurally the earlier phase of the appeal unfolded, essentially Elahi was making an argument premised on an assumption. The assumption was one that the during the earlier appeal, we, as the Supreme Court indicated in its per curiam opinion, Iran's Ministry of Defense had not waived an argument based on whether Section 1610A of the Foreign Sovereign Abuse Act applied as opposed to Section 1610B. All we simply said is if Section 1610B applied or was applicable to the situation, it would not on its own terms govern the case. Now, on remand, as I understand the scope of remand from the Supreme Court, based on the per curiam opinion, is that that issue is very much before this Court. Right. But I mean, how did you make that issue previously before the district court or the prior panel? The Ministry of Defense's earlier briefing to this Court admittedly focused exclusively on Section 1610B. Under our typical appellate law, if you don't make the issue, it's waived. And when I read the Supreme Court's per curiam opinion, I thought it was really pretty and fairly critical of the panel decision for not addressing an issue that MOD didn't raise. Let me be clear, Your Honor. MOD did raise the issue before this Court that 1610A should be applied here. The bulk of the briefing before this Court in terms of the issues framed in the earlier phase of the appeal was instead focused on Section 1610B's applicability. But MOD did certainly raise this issue in its briefs earlier that 1610A was the proper basis. Where's the record to help us decide whether or not, if we're going to examine the foreign state status, that MOD should come under that exception? Your Honor, may I step back again and I can pull that document for you? You will find, Your Honors, that if we look originally, this was raised first of all in the district court. I'm not talking about raising it. I'm looking for the evidence as to how we analyze the core functions test. Oh, I'm sorry. You're asking us to... If it had been raised, presumably, then there would be a record in the district court from which we could make the judgment as to whether or not you meet the core functions test, assuming that's the test we apply. Well, there was some discussion in the district court about the nature of Iran's Ministry of Defense. I don't believe there was any fact-finding that would be, as we indicated, it's possible this panel might decide that fact-finding as to the nature of a foreign government ministry would be appropriate. But we would submit that the case law is very clear that a foreign ministry is considered part of the essential sovereignty of a foreign state under Section 1610A. We do not believe any further fact-finding would be required on that ground. Now, we do indicate that further fact-finding might be required as to the legal consequence of Section 1610A's application in this case and whether the cubic judgment is, in fact, being or intended for use for commercial activity in the United States. That issue was before the district court. The district court judge felt he did not have to rule on that issue. So if there's going to be any remand, at least for fact-finding, it would only be on that for Iran's Ministry of Defense's status. Other courts of appeal, including the Garb case and the Roeder case, have indicated that foreign ministries are part of the essential sovereignty of a foreign state and are to be treated under Section 1610A. And how do you reconcile that with the House report that indicates that if it's an entity that can act independently and sue in its own name, then it's not, then it is an agent or instrumentality? Well, the legislative history at that point is referring to the elements of what defines an agency or instrumentality within the scope of Section 1603B. And I think that discussion was illustrative of different kinds of entities. The position that Iran's Ministry of Defense takes here is that there might be situations where a foreign ministry of defense has essentially outsourced its national security to a security or mercenary organization. There is certainly no indication that that has occurred here. I don't think there's need for further fact-finding to that degree. I think the Supreme Court's ruling in Danczak is very clear on this subject. And I think the Trans-Arrow case is also very clear that the military forces of a country are, if so facto, part of the main sovereignty. I want to turn your attention to whether this judgment on the arbitration is really at issue before the tribunal. Number one, do you know what the status of the proceedings before the tribunal are? Yes, Your Honor. Case the claim before the tribunal is Case B-Zimboy 61. Yes. It is continuing to be pending before the tribunal. Case B-61 includes — I'm sorry. I'm sorry. It's sort of familiar to me with Danczak. Yes. It is currently pending before the tribunal. We would submit that the TRIA language in 201C, which refers not only to claims, a property that is at issue in claims against the United States before an international tribunal or that is subject of awards by such a tribunal, was broadly stated by Congress specifically to effectuate Congress's goal to insulate the United States from charges that it has violated its international obligations and conflicting judgments. Let me put the question to you this way. Let's assume that for some reason the tribunal rules against Iran. Does it have any effect on this award that it has against Cubic? I don't believe it would. Decisions like HAGNA in both the Seventh Circuit and Fourth Circuit have indicated that as long as it's presently at issue before the tribunal, that's what matters in terms of our analysis. That's not really the thrust of my question to you. And that is, that is it really at issue? Nobody doubts that there's a valid judgment there in favor of the Iranian government. And if for some reason there is a ruling against the Iran government that they have no rights under what they're claiming against the United States in the to do with what's going on before the tribunal. I would not agree with that supposition, Your Honor, so if I may answer your question since I see my time is up. Let me finish answering your question. Certainly. The nature of the proceeding before the tribunal in the B61 case is a State-to-State dispute in terms of whether the United States has accorded with its obligations to Iran under the Algiers Accords. That's right. But the arbitration is whether Cubic followed its proper obligations to Iran and was found it did not in certain respects. Exactly. But if I may finish, Your Honor. At issue in this particular claim before, this is Contract 134, this particular subclaim in B61 is whether the Cubic judgment has been properly been allowed to be repatriated to Iran. That implicates the United States' international law obligations under the Algiers Accords. The effect of a lahi attaching successfully, if this Court were so to rule, the Cubic judgment would be to prevent its repatriation to Iran. The United States would then be in default on its obligations under the Algiers Accords, and Iran would be then entitled to seek the equivalent of the Cubic judgment from the United States. That is why the Cubic judgment. But what is the meaning of at issue? I mean, what you're talking about here is it's not being litigated. It's already been litigated. It's already been decided that Cubic owes X amount. I mean, if, in fact, under the law, that X amount actually can be attached by a lahi, it's still been adjudicated, and you're just saying the U.S. would have to pay more rather than less. Well, Your Honor, I think that is in and of itself sufficient, given that the way Congress drafted this provision in TRIA. Well, how did they – what is – what meaning did Congress give at issue? Well, we have no indication from legislative history besides the bare text. I would just simply observe to the Court that there are two distinct elements in this provision, TRIA and 201C. It's at issue in – at issuing claims against the United States before an international tribunal or that is the subject of awards by the tribunal. We're not suggesting that the Cubic judgment is going to be part of a subject of an award by the tribunal. But it is at issue in the sense that the United States' international law obligations are at stake, and there is the potential for set-off for any claim by Iran against the United States in terms of whether Iran's Ministry of Defense can receive this judgment through this Court and through the district court. All right. Counsel, your time is up. You've gone over. Thank you, Your Honor. And back to Ken. We will hear from Elahi. He has 20 minutes. First, tell us how you pronounce it. Elahi. It's Darius Elahi, Your Honor. And the Court has graciously offered me the option of an additional five minutes of rebuttal, and if requested, and I would graciously request this Court's permission to have five minutes of rebuttal. Well, let me start out with addressing the issues that have been raised by Mott here with respect to, one, the applicability of the Terrorism Risk Insurance Act and the issue of relinquishment and whether or not the cubic judgment is block property that would be subject to attachment under the TRIA, and then, if time permits, turn to the issues of other provisions of the Foreign Sovereign Immunities Act, which would allow Elahi to attach the judgment. Is there a dispute about whether or not there's been a relinquishment? There were some questions from us about the record showing it. Is there any dispute that there was a relinquishment? There is no dispute, Your Honor, that Mr. Elahi did apply to the Department of Treasury to obtain a payment from the Department of Treasury in partial compensation of his compensatory damage judgment and received approximately $2.3 million from the Department of Treasury. When the matter was initially briefed before this Court in 2003, Mr. Elahi, in his answering brief, stated that he had applied to the Department of Treasury pursuant to the regulations that were issued by the Department of Treasury to obtain partial compensation of his compensatory damage award. So the parties were certainly put on notice at that time that Elahi had made the application. It was only later that the amount was actually paid. Well, that's telling me about the timing. Yes. Does Elahi dispute, I mean, that there was, in fact? We dispute that as a result of obtaining that compensatory, I'm sorry, obtaining that payment, that Mr. Elahi relinquished any right to attach under the Terrorism Risk Insurance Act. Are you saying it doesn't apply or that it doesn't come within its term? It does not come within its term, Your Honor. So you would argue it's not at issue, but that's the legal question. Correct. But in terms of a factual issue, is there a dispute between the parties as to whether or not there was a relinquishment as to, and not a total, I understand it's only partial compensation, but at least as far as the regulations provide. Yes. The government having paid Mr. Elahi, it therefore has this protective part of TRIA which says, and to the extent that property is at issue before an international tribunal, he does relinquish a claim to that amount. Correct, Your Honor. Mr. Elahi did sign a waiver document, the text of which was set forth in the Federal Register in which I believe the United States government has presented as part of its appendix to its brief. So the document your client signed is identical to the regulation? Correct. We signed a document, the text of which was set forth in the regulations. On what date did he actually consummate this transaction? The relinquishment, I'm sorry, the documents that Mr. Elahi signed in order to obtain payment from the Treasury Department was, were made, I believe, in April, which is why in our answering brief of 2003, Your Honor, which is why in our answering brief we said we had made application as part of obtaining compensation, as my recollection is, as part of obtaining, excuse me, as part of applying to the U.S. government for funds, Elahi was required to sign the relinquishment. Now, in your papers you say that at the time that you signed or your client signed the waiver document, you were, you relied in essence on the district court's finding that the claim was not at issue before the Iran tribunal. That is correct, Your Honor, and we believe that the district court's analysis was correct on that point. So I have two related questions on that. Is the district court's finding law of the case that we now follow? I mean, we didn't, I think we upheld it previously. And if we, in order to rule for you, do we have to find or rule for the, I guess the mod U.S. government position, do we have to find that the district court was clearly erroneous in making that finding? Your Honor, we would believe it is the law of the case. I would like to point out to the Court that the district court's ruling with respect to at issue was with respect to Mr. Flato, who at the time had already received payments. The Ministry of Defense had argued before the district court that Mr. Flato had waived his right to pursue an attachment on the grounds that the cubic judgment was at issue. That is what the district court determined in saying that it was not at issue, but that it had been regulated, and therefore, Mr. Flato had waived his right under another provision of the relinquishment requirement. Mod did not appeal that aspect or raise it as an issue with respect to Mr. Flato's appeal before this Court. And therefore, we believe that Mod has relinquished that argument with respect to Mr. Elahi in this case. Well, the question I have really is, is it a factual question or is it a legal question whether something is at issue in another tribunal? We believe that it would be a legal question, Your Honor, given the documents that have been presented as to the claim that is being pursued by Iran against the United States in the tribunal. I would point out that the tribunal proceedings are not public proceedings. What we know about the tribunal is what has been presented in the amicus brief of the United States government and also with the declaration of Ms. Amasi. But we believe that in light of the documents that have been presented, this Court can make the determination that the cubic judgment is not at issue. Can I just understand that? As I understand the posture, please tell me if I'm wrong, you are seeking to attach, have attached a monetary judgment that came out of a dispute between Iran and cubic. And you have, and they had a claim for, I think it was like $80 million and they got something like $3 million, I guess. So they have a claim against cubic and they're also, they have a parallel claim, as I understand it, against the United States that through the asset freeze and everything else, they interfered with a variety of contracts, including the cubic contract. So in the Hague, what they're trying to say is, United States, you owe us to the extent we can't otherwise get compensated, to the extent we lost money on contracts with your citizens or your countries. We are entitled to get that money from you. Is that okay so far? That is my understanding of what their argument is. Okay, so that's their argument. So now you have, now if they were to prevail on that theory, if they go after the, if they are successful in the Hague in pursuing a, in effect, what I'll characterize, interference with contract claim and they prevail, normally in that kind of a situation, I assume the United States would say, well, we don't owe you $80 million, if that's what the tribunal were to award. We owe you less than that because you got $3 million out of cubic. And the Iranians would say in response to that, no, we did, but guess what? The United States courts allowed Mr. Elahi to come and take that $3 million away. So why doesn't that put, at least within the concept of the TRIA Act, why doesn't that put the judgment at issue in the Hague proceedings?  I think first is that Iran would say and has admitted that there should be a setoff of the amount, of any amount that it may recover against cubic. And that setoff doesn't make Iran's claim against the United States at issue. The second point, Your Honor. I'm sorry, I didn't follow that. Well, the fact that there's a setoff. Time out. The judgment is the property here, right? That's the property that's issue, at issue. That's the property that you are seeking to attach, no? Correct, the property in this case, Your Honor. And so that property, that judgment, that $3 million, is also what is at issue in the Hague by way of offset. We don't believe that it would be at issue, Your Honor, because it is not one of the issues raised by Iran against the United States. What Iran has said in its footnote that has been cited in these proceedings is that Iran's claim against the United States does not involve the same subject matter as its claim against cubic. Well, that's true. What it has, it's an interference with contract. It's a claim that the United States interfered with cubic's performance of its contract, and it wants the United States to compensate, and it will offset against its $80 million claim the $3 million it's already recovered from cubic for its nonperformance. That's the argument, but our position is that the issue, the definition of at issue means at dispute. Okay. Or that there are contrary positions between the parties. We don't believe there are contrary positions. Well, there aren't yet, but, well. Between Iran and Maad. I mean, sorry, between Iran and the United States. In fact, the United States would like the cubic judgment to constitute a setoff. Yeah, I'm sure they would, but it won't set it off. So they're not really at issue before the Iran-U.S. Claims Tribunal on the cubic judgment. They're at issue with respect to other claims. Do you think that if you successfully attach the $3 million, Iran will then still set that off against whatever the Hague Tribunal decides it owes Maad? I'm not a mind reader, Your Honor. You may want to ask Iran then, but I would suspect they would not. I'm not being facetious. They would not make such a setoff. Of course they wouldn't. So, therefore, what you're describing is with their existing judgment unattached, they're willing to set that off. But if that $3 million goes away because it's now been diverted from Maad's pockets into, and maybe properly so, Mr. Elahi's pockets, they wouldn't be in, I doubt that they would be saying, well, we're going to go ahead and just ignore that. I believe that's what Iran would say. But I think in terms of the legal analysis, one should look at what the courts have said as to whether or not an asset is at issue for purposes of relinquishment under the TRIA. And I would refer the Court to the Fourth Circuit's decision in Hegna v. the Islamic Republic of Iran, which is cited in our briefs, which also cites to a Southern District of New York decision, again involving the Hegna plaintiffs against the Islamic Republic of Iran, where in terms of those courts looking to whether or not the property at issue, in that case it was diplomatic property, was before the Iran-U.S. claims tribunal, was whether or not that tribunal had taken jurisdiction over the claim. And in this case, and as the district court found with respect to Mr. Flato, the U.S.-Iran claims tribunal rejected jurisdiction of Iran's claim against Kubik. Iran filed a claim against Kubik in January of 1982. Their tribunal said it had no jurisdiction over that claim in 1987. That may be true, but it has jurisdiction over the claim against the United States, which involves interference with the Kubik-Iran contract. Again, Your Honor, our analysis would be that whether or not property is at issue before the Iran-U.S. claims tribunal is whether or not the claims tribunal has taken or is taking or the issue is pending before the claims tribunal. Where the claims tribunal has rejected jurisdiction over the claim, then the property involved in that claim is at issue. The property involved in that claim is no longer at issue before the Iran-U.S. claims tribunal. And this is the analysis that the district court had engaged in, and we believe that that analysis is correct and should be followed here. What are we to make of the Iran's position that I guess the district court relied upon that the ICC ruling has no jurisdiction over the claims tribunal because they're not the identical claims? Well, that is one of the bases that the district court did use in making its ruling with respect to the FLEDO plaintiffs, that the Kubik judgment was not at issue. And I think we need to, the analysis on that, the analysis is it's not raised judicata, because it is a different subject matter, has a different object, and therefore it is distinct. Iran's claims against the U.S. are distinct from its claims against Kubik. And therefore, we believe that the district court's ruling is correct and should be dispositive of the argument both raised by the Ministry of Defense and by the amicus of the United States here. Now, proceeding, if Mr. Elahi did not relinquish his right to attach under the Terrorism Risk Insurance Act, we believe that that act provides sufficient basis to uphold the attachment of the Kubik judgment. And under the TRIA Section 201, Mr. Elahi, as a claimant with a claim against Iran, can attach the assets of either the foreign state itself or an agency or instrumentality of Iran. It does not matter whether or not you characterize Maad as either being the state of Iran or an agency or instrumentality. The force of Section 201A of the TRIA still has its effect. The issue that has been raised by Iran, I'm sorry, by Maad in this case, is that the asset is not a blocked asset, and therefore, Mr. Elahi cannot use Section 201A of the TRIA. We believe that argument is not correct. In its briefs before the Ninth Circuit, Iran took the position that the executive order that was issued by President Carter in 1979, that's Executive Order 12170, entitled Blocking Iranian Government Property, was applicable to the Kubik judgment, and as well as the implementing regulations of that executive order, Section 535.201. Those are blocking regulations for property of the Iran, of Iran, and we believe, as Iran, I'm sorry, as Maad has stated in its brief, those regulations and the executive order still are in effect, so that the Kubik judgment is blocked and therefore can be attached by Mr. Elahi. In fact, this court in its prior opinion in this case, which was not questioned by the Supreme Court, previously found that the Kubik judgment does come under Section 535.201 of the Treasury Department regulations. Those are the regulations implementing the Kubik judgment, and therefore, we believe that this court, when you go through the analysis, has already determined that the Kubik judgment is blocked property and therefore subject to attachment. Now, Maad does cite to a decision out of the Southern District of New York involving property that entered the United States in the 1990s that was transferred by Iran to certain banks, Iranian banks in the United States, and was then transferred to the U.S. In those decisions, the court held that because the funds from Iran came into the United States after the return of our hostages, in fact, a few days ago, I guess it's 1981 when those hostages came back, that funds entering the United States after 1981 or property entering the United States after 1981 would not be blocked by executive orders. But this Kubik judgment doesn't involve funds that had been transferred into the jurisdiction of the United States after 1981, and therefore, the Kubik judgment remains blocked under the President's executive order and the regulations. So we believe that the decisions cited by Maad are not applicable in this case. And finally, even if the TRA doesn't apply, and for the reasons we did set forth in our brief, we would submit this court may uphold Mr. Eladi's attachments under either 1610A because Iran — I'm sorry, Maad has intentionally come into the jurisdiction of the United States pursuing a commercial arbitration award to be confirmed, has engaged in commercial activity, as this court found, and also has used the Kubik judgment for commercial activity in this country under 1610A, and also that Maad may be considered an agency or instrumentality of the government of Iran. All right. Thank you, counsel. We will hear from the United States in 10 minutes. Good morning, Your Honors. I'm Louis Yellen from the Department of Justice, here today representing the United States as ambicus curiae. I'd like to begin this morning, Your Honors, by saying that the United States has the utmost sympathy for the case, and in no way is meant to detract from the government's strong condemnation of Iran's political assassination of Cyrus Elahi. So why are — is the government suddenly participating in this matter? Well, Your Honor, we were not aware of this case while it was pending before this panel. We only became aware of the case after the Court issued its opinion. The government has important interests, its own sovereign interests, before the Iran-U.S. Claims Tribunal, and we have a strong interest in receiving the full protections of the Foreign Sovereign Immunities Act, and that's the reason for our participation here. But your precise — I mean, so your precise concern isn't just that you want the cubic judgment to offset. It's a broader concern that other foreign states could somehow attach or affect United States interests abroad, if we were to let this — It's all of those interests, Your Honor. We certainly do have a very strong interest in the status of the Iran-U.S. Claims Tribunal, I'd like to make one modification to your statement. It's not an offset in the government's view. It's a question of substantive liability. Iran — Judge Fischer's colloquy with Mr. Elahi's counsel, I think, fairly encapsulates the government's view of the status of the Iran-U.S. Claims Tribunal proceeding. Iran has made a claim against the United States concerning one and the same contract that was the subject of the dispute between cubic and the ministry. And the United States has said that the ministries received all the compensation to which it's entitled through the arbitration judgment. And so the United States has — That's really — the arbitration is really not at issue, however, anymore. Well, Your Honor, the arbitration is not at issue. However, the amount that was awarded to Iran is very much at issue. And I'd like to speak to that, if I may. Mr. Elahi would like to — what urges this Court to construe at issue very narrowly to mean subject to a claim before the tribunal. If it's not subject to a claim, according to Mr. Elahi, then it's not at issue before the tribunal. That's not a correct interpretation of the statute. And we know that both from the statutory language and from the policies underlying Congress's enactment of this relinquishment provision. What I'd like to do is call the Court's attention to the exact language in the statute. The statute requires a relinquishment of, and now I'm quoting, all rights to execute against or attach property that is at issue in claims against the United States before an international tribunal, or that is the subject of awards before subject — before the tribunal. Now, it's the contrast I'd like to make between at issue in claims and the subject of awards. The reason for the distinction in the language is because while a claim is still live in the tribunal, the scope of the United States' potential liability to Iran is indeterminate. And the — what Congress was doing in effecting this — excuse me, in enacting this relinquishment provision was trying to protect the United States' interests before the tribunal. Congress used narrower language concerning awards of the tribunal that is subject to an award because at that point the United States' liability has become fixed. And just because some property might relate to an award, it no longer matters, because the United States could not be liable conceivably for property that relates to an award, again, because liability has at that point been fixed. And it's the basis for the government asserting a broader definition of at issue. What are you relying on? Black's Law Dictionary? I mean, what precedent are you relying on? Two things, Your Honor. I mean, dictionary definitions, I think, are appropriate. Mr. Alahi cites quotes from Black's Law Dictionary that he didn't give a full quotation or at least not from the copy of Black's that I have. Black's Law Dictionary defines at issue also to mean in question, which is a significantly broader concept than specifically in dispute. In addition, it's the contrast between the language in the statute itself, at issue and subject to. As Your Honor knows, under basic canons of statutory construction, we assume that when Congress uses different and at issue we would represent is a broader notion than subject to. And again, the reason is, the purpose of the relinquishment provision, Congress established a system that provided a quid pro quo agreement. Individuals with judgments against Iran got an opportunity to choose to accept a definite payment in exchange for giving up something. And in this context, the something was giving up an opportunity to attach property that might affect the liability of the United States. Now, the point is, if, again, it's a broad requirement for property that's at issue precisely because Congress intended to protect the United States' interest before the Iran-U.S. Claims Tribunal. Now, I'd like to ---- Sotomayor, before you turn to another subject, Your Honor, MOD is claiming that these funds are not blocked assets. Now, it took a completely different position within this proceeding, so they may be judicially blocked from asserting that now. What is your position as to whether the funds are blocked? It's our position, Your Honor, that the funds are not blocked. And actually, the reason for that is what this Court actually gave in its prior panel opinion at page 1224, subsection D. Mr. Elahi's counsel gave an account of this Court's decision concerning the status of the property. And with respect, I believe it was a mischaracterization. As Your Honor just noted, previously, the ministry had argued that the property was blocked under 535-201. This Court rejected that analysis. Now, while the prior opinion has been vacated and is no longer having legal force, I can tell the government excuse me, the Court, that the government completely agrees with the analysis on page 1224. The Court noted that there's another regulatory provision, 535.579, which is a general license, which removed the blocking prohibition from any property that came within the United States' jurisdiction after the operative date. I believe it was January 19th, 1981. And the ---- That is correct, Your Honor. So why did the government give them $2 million? I'm sorry, Your Honor. The government didn't give them the $2 million under the blocked under the attachment provision. TRIA had a number of different provisions. One was a provision that allowed third parties like Mr. Elahi, who have judgments against Iran, to seek judicial attachment of property. There was another provision, which was an amendment to the Victims Protection Act, entirely separate from this to give, on a pro rata distribution, to give compensation, partial compensation, to certain individuals. Mr. Elahi was one of them. That provision had nothing to do with whether property was blocked or not. And it was under that provision that Mr. Elahi chose to accept compensation in exchange for giving up an opportunity to attach property that's at issue in claims. Now, that section is what? That was Section ---- it's Section ---- it's Section 2002a to d of the Victim Protection Act. There's a TRIA provision, which we cite in our brief. I'm sorry, I don't have the citation easy at hand. I'd be happy to refer the Court to it later if you'd like, but it is also in our brief. The TRIA ---- there's a TRIA provision which specifically identifies that section I mentioned, 202a to d, and says that section ---- the at-issue-in-claims portion of that section applies to individuals such as Mr. Elahi, who accepted a pro rata distribution under the amendment. So ---- Kennedy, did you point me to where on page 1224 of our prior opinion that you're referring to on the blocked assets? Yes, Your Honor. The Court did not use the term blocked assets. The Court ---- So I'm noticing. I'm sorry? So I'm noticing. Yes, sir. However, the Court's analysis is exactly right. The question is whether there's a general license that removes prior prohibitions. So you're talking about subsection d of the opinion? Yes, Your Honor. Exactly. It's that full subsection d. And 201, which the Court discusses, is the blocking prohibition. All right. Thank you. Now, if the Court has no further questions on relinquishment, I'd like to turn to the second issue the government would like to address, which is whether or not the ministry is an agency or instrumentality or an inherent part of the Iranian State. The government has argued ---- Does the government agree that the appropriate standard for making these determinations, at least on foreign State, is the so-called core functions test? Is that the ---- It's a modification of the core functions test, Your Honor. The three courts that have adopted that test have adopted a categorical rule allowing for no derivation. The government has always argued not for a categorical rule, but for a strong presumption. The strong presumption comes from the notion that core functions like defense, like treasury, like foreign affairs should be presumed to be an absolute integral part of the State, unless there's a good reason for thinking otherwise. However, we've never argued for a categorical rule, precisely because it remains possible, even if unlikely, that a State could set up its ministries, one of its ministries, differently. So, for example, in the case of a defense ministry, it's conceivable, even if unlikely, that a foreign State could decide to completely give its defense powers to a mercenary company that operates on a for-profit basis and goes around the world offering to provide defense services. So if you're arguing for a presumption, then that means that there should be an opportunity to rebut that presumption, and what kind of evidence might come in to rebut that presumption if Elahi had the opportunity to present such evidence in this case? I think, Your Honor, there has to be some reason. You're exactly right, Your Honor, that it is a rebuttable presumption. However, the presumption in the government's view has to be an extremely strong one, given the incredibly important foreign relations and diplomatic purposes at issue here. So it's incumbent on any individual who wants to suggest that a ministry that typically operates under the core functions of a State is not, in fact, operating that way. The individual has to provide some reason for thinking that some further discovery or some further fact-finding is necessary. In the government's view, a bare allegation is not sufficient. You can't go, in our view, on a fishing expedition precisely because this would entail potentially deposing high officials of foreign countries. But what do we know about the MoD's operation and relationship and function in the government that was run by the Shah before he was deposed? And that's when these – that's the timing of these contracts. So how do we – what do we know about that? Your Honor, again, although the opinion is no longer of legal force, this Court already in its prior opinion considered the evidence in the record and said that the ministry is a core component of the government of Iran that engages in absolutely essential governmental functions. And again, we agree, though that's not binding on this panel at this point, we agree with that analysis and we think that the Court got it exactly right. And Mr. Elahi has given no reason for thinking that, in fact, what we have here is a ministry that's set up on the mercenary model as a for-profit commercial enterprise. Do we look at the pre-Ayatollah Khomeini government or do we look at the post-Khomeini government? I believe you look at the existing government, Your Honor, because the purpose of the Foreign Sovereign Immunities Act is to give existing governments particular immunities from liability and from attachment. And the question would be whether or not the ministry, which is now being sued. After all, Mr. Elahi is not seeking attachment from the pre-Ayatollah ministry. He's seeking attachment from the existing ministry of defense. The question is, what is the ministry's existing status under existing law? Just so I understand it, if the ministry structure changes between, for example, if there had been a new, under the new regime, Ahmadinejad suddenly decided he was going to organize this mercenary M.O.D., are you saying that if we were looking at it today, the government's position would be that the outcome might be different? If that had already happened, Your Honor? Happened after the attachment, in this case, was sought and granted. But it's now on appeal to us, for example. Or even in the district court. In other words, if circumstances change, if the entity, let me flip it the other way. Let's suppose the entity that entered into this contract was one of these mercenary delegates, more like Somalia, maybe. Where they, you could say there wasn't really a functioning government. So whatever was set up was, arguably, was not a core function. Okay, it had been delegated out. But then the new government comes in and organizes such that by the time the case comes to before the district court, the ministry of defense now is a core function. Are you saying that the government's position here, that is what should be controlling? I'm afraid, Your Honor, that there's not an easy answer to that question. And let me explain why. Of course, we would not want to allow foreign governments to protect against appropriate litigation by simply shuffling around ministries and so forth. This is something that the Supreme Court considered at length in its Banshek opinion. And it's one of the reasons, although in Banshek, the question was whether an agency or instrumentality should be liable for a claim against the Cuban State. At that point, the agency or instrumentality no longer existed, and all there was at that point was a ministry, which was the successor in interest. So I think it's – I think Banshek, if I'm remembering correctly, is exactly Your Honor's hypothetical. And in that context, the Supreme Court said it would be improper and inequitable to allow the ministry's current status in that context of that case not to be liable for the original claim. So, again, it's very fact-dependent, but at least as an initial matter, I think the initial look is at the existing current structure. Ginsburg. Yes, I was just going to say, your time is up, counsel. Thank you very much, Your Honors. Thank you. And we'll hear from Mr. Lahey's counsel. Thank you, Your Honor. In the few minutes I have, I'd like to address three of the matters that have been raised by the United States. The first, again, is going back to the issue of relinquishment. The United States, I think, has taken the position that at issue should be determined based upon whether or not the cubic judgment might affect liability of the United States or any damages that the United States may have to pay against Iran and the U.S.-Iran Claims Tribunal. That is not the statutory language. The statutory language is whether or not the property is at issue. And I think if you even take a look at Black's dictionary, at issue means in dispute or in question. As far as the representations that have been made, I don't think there's – none of the representations indicate that the cubic judgment that Mott has is in dispute or in question before the Iran-U.S. Claims Tribunal. The United States isn't disputing it, the judgment or the amount. Mott isn't disputing the judgment or the amount. It's merely a set-off. And I think in terms of this Court's analysis of the issue, I think the Fourth Circuit's state opinion on whether or not property is at issue is helpful. As the Fourth Circuit stated in its Hegna opinion, in terms of a jurisdictional issue is still an issue unless and until the tribunal determines it lacks jurisdiction over Iran's claim to the property. And in this case, the tribunal rejected jurisdiction over Mott's claim against cubic. And we believe that as a result of the tribunal rejecting jurisdiction over Mott's claim against cubic, which results in the cubic judgment, then the cubic judgment certainly is not an issue before the tribunal. Now, with respect to Mr. Elahi's ability to attach blocked funds, as the United States points out, subsequent to the blocking provisions that were entered into with respect to Iranian property, subsequent regulations were issued in order to license transactions in property. Those are referenced in this Court's prior opinion, Section 535.579A2 does provide for regulation of transactions in Iranian property. Our position in this case is that the blocking provisions are still in force and that additionally there are regulations pertaining to transactions or regulations with respect to property, including blocked property, but that Section 535.201 of the regulations which blocked Iranian property have never been repealed. Those are still in force. Any subsequent regulations are simply on top of the blocking regulations. So you have two sets of regulations that may apply to the cubic judgment, but that one does not supplant the other. Under what section did he accept this payment and under which it was made? Mr. Elahi accepted payment pursuant to legislation that was enacted in November of 2002. It's the Terrorism Risk Insurance Act. The relevant provisions of that statute are a note to the Foreign Sovereign Immunities Act, Section 1610. So it's a note to Section 1610. I don't believe there's any further codification within the U.S. Code. So this was a special statute that was passed, the TRIA, to enable victims of terrorism to obtain recompense, both from assets of terrorist states and additional assets of the U.S. Treasury, which had seized assets of terrorist states. Finally, with respect to Elahi's provision, ability to attach under Section 1610A, we would submit, which has to do with if this Court determines that Maad is a foreign state, we believe that by pursuing the cubic arbitration and having that confirmed in the United States courts and obtaining the cubic judgment, that Maad is using the cubic judgment to engage in commercial activity in the United States as part of its ability to enforce its contract rights and claims against cubic, which this Court has found to be commercial in nature. So pursuing a judgment against cubic, obtaining the cubic judgment, is engaging in commercial activity in the United States because it is used to and employed by the Ministry of Defense      GOTTLIEB Thank you. That was very well-briefed in your papers. We are out of time. You went over your time. MR. VETTERMAN Thank you for your indulgence. Just to respond to two questions by the Court about whether Iran has waived or stopped certain arguments, to be helpful, I was not, Judge Warlaw, able to answer your question about where in the earlier set of briefing Ministry of Defense raised the Section 1610A issue. You will find in the opening brief that was filed on April 11, 2003, at pages 2 and page 10, that discussion, and then in the reply brief in the earlier phase of the appeal filed on September 10, 2003, at pages 25 and 28. The other question that Judge Fletcher raised was whether Iran can now be arguing that the cubic judgment is not a blocked asset because of our earlier position. Our earlier position in our appellant's brief at page 32 was whether the cubic judgment was a blocked asset within the meaning of the International Emergency Economic Powers Act, not under TRIA. The definition of blocked asset under TRIA is different than the definition under IEPA. And therefore, the position we took at that earlier stage was not relevant to the current proceedings. MS. GOTTLIEB All right. Thank you. Thank you to all counsel for a very well-argued case and a complex case. And this session of the Court is adjourned. Thank you.
judges: B. Fletcher, Wardlaw, Fisher